UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| DONNIE ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-61-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| 3M COMPANY, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Donnie Adams was diagnosed with two serious coal-related lung diseases in 1981. He filed a workers' compensation claim against his employer that same year, was deemed permanently disabled, and was awarded workers' compensation for life.  Over the next twenty-nine years, Adams took no action against the manufacturers who made the respirators he wore in the mines to prevent him from inhaling coal dust.  Then, in 2011, his sister advised him that he should consult an attorney about his shortness of breath.  Adams did, and this lawsuit followed shortly afterward.  Adams claims that the defendants, 3M Company and Mine Safety Appliances, made defective masks and respirators that Adams wore while working in the mines and that the defects caused his lung diseases.  The question before the Court is whether Adams's suit is timely.  Adams claims that an exception to Kentucky's one-year statute of limitation known as the "discovery rule" applies to his suit.  But the discovery rule does not apply because Adams was on notice that he might have a claim against the defendants and failed to investigate that claim.  Adams therefore cannot take advantage of the discovery rule, and his suit must be dismissed as untimely.

## BACKGROUND

Plaintiff Donnie Adams worked for a number of coal companies from 1967 until 1981.  R. 1 at 3 ¶ 13.  Because of a back injury, he left this line of work in 1979.  R. 27-2 at 3−6 (Tr. 35−38).  While working in the mines, Adams wore respirators made by 3M and Mine Safety.  R. 1 at 4 ¶¶ 15−16.

In 1981, Adams learned that he had two serious coal-related lung diseases.[1]  Dr. Lowell Martin diagnosed him as having silicosis in August of 1981.  R. 27-2 at 32 (Tr. 302).  Dr. Robert Penman diagnosed him with coal workers' pneumoconiosis ("black lung")[2] in early October of 1981.  R. 27-5 at 1.  Later that month, Adams applied to the Kentucky workers' compensation board, claiming that coal workers' pneumoconiosis had rendered him totally and permanently disabled.  R. 27-3 at 2.  During the board's adjudication of his claim, Adams was examined by three other doctors who all provided deposition testimony confirming that Adams had developed black lung.  *See* R. 27-5.  In 1983, the board declared him totally and permanently disabled due to pneumoconiosis and awarded him workers' compensation benefits.  *See* R. 27-6.  Adams also applied for federal benefits under the Black Lung Benefits Act, but his claim was denied. *See* R. 27-7; R. 27-8.

That seemed to be the end of the matter.  Adams moved to Louisa, Kentucky, and lived off of his monthly social security disability benefits and workers' compensation award.

---

[1] Though the difference does not matter in this case, it should be noted that silicosis and coal workers' pneumoconiosis are two separate conditions with similar causes but different symptoms.  *See* Chris Winder, *Occupational Respiratory Diseases*, Occupational Toxicology 69, 95–98 (Chris Winder & Neil H. Stacey eds., 2d ed. 2004) (defining and comparing the symptoms of silicosis, asbestosis, and coal miner's pneumoconiosis).

[2] "Coal workers' pneumoconiosis" is the medical term for the condition that lawmakers have termed "Black Lung."  *See* Stephen K. Hall, *Toxic Responses of the Lung*, *in* Chemical Exposure and Toxic Responses 77, 90 (Stephen K. Hall, Joana Chakraborty, & Randall J. Ruch eds., 1997).

*See* R. 28-7 at 5, 10–11 (Tr. 10, 33–34).  But in July 2011, his sister Linda advised him to talk to an attorney about his shortness of breath.  *Id.* at 24–25 (Tr. 87–91).  Adams approached Zane Cagle, who now represents him in this case.  *Id.*

Adams filed this suit on June 25, 2012, more than thirty years after his first black lung diagnosis.  *See* R. 1.  His suit claims that he wore defective masks and respirators manufactured by the defendants, 3M and Mine Safety, and alleges the products' defects caused his lung diseases.  *Id.* at 4–5 ¶¶ 15–18, 21.  He seeks damages from both defendants, under several theories of liability, to compensate him for the various losses he has suffered because of his injuries.  *See id.* at 5–19.

Because there was obviously a statute of limitations issue in this case, the parties agreed to have a limited period of discovery to focus on just that issue.  *See* R. 13 at 1 (citing R. 11).  That limited discovery period is over, and both defendants have filed motions for summary judgment.  R. 27; R. 28.

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  Since 3M and Mine Safety brought the motions, the Court must view the evidence in the light most favorable to Adams, drawing all justifiable inferences in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  That presumption does not mean, however, that Adams has no burden.  To survive summary judgment, he must identify sufficient evidence in the record for a reasonable jury to

3

return a verdict for him on his claims at trial.  *Id.*  The Court assesses the legal sufficiency of the evidence, not its credibility or weight.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (collecting cases applying Rule 56(c) and Rule 50).

## II.      The Timeliness of Adams's Complaint

The defendants' motions turn on one issue:  Does Kentucky's discovery rule toll the statute of limitations period for Adams's complaint?  It does not.  First, by the end of 1981 Adams had enough facts in front of him to put him on notice that he had been injured and that the defendants might have caused that injury.   Second, Adams failed to exercise reasonable diligence in investigating the potential causes of his injury after he was diagnosed in 1981.

### A.      Kentucky's One-Year Statute of Limitations and the Discovery Rule

Normally, plaintiffs bringing a personal injury claim like Adams's must file suit within one year of the time when their cause of action "accrued."   Ky. Rev. Stat. § 413.140(1); *see Combs v. Albert Kahn & Assocs., Inc.*, 183 S.W.3d 190, 194 (Ky. Ct. App. 2006) (holding that plaintiffs injured by asbestos exposure have one year to file their complaint after their claim accrues).   Some causes of action, however, are not "readily discoverable" within the default one-year period.  *Vendertoll v. Commonwealth*, 110 S.W.3d 789, 797 (Ky. 2003).   The principal examples are cases involving latent illness or injury caused by exposure to harmful substances.  *See id.* at 796–97.   In these cases, a one-year statute of limitations is unnecessarily harsh because the potential plaintiffs have no way of discovering their cause of action within that year.   For these cases, Kentucky has created the discovery rule as an exception to the normal statute of limitations period.  *See id.*

4

The discovery rule tolls the statute of limitations period "until the plaintiff discovers or in the exercise of reasonable diligence should have discovered" that:  (1) she was injured, and (2) her injury "*may* have been caused by the defendant's conduct." *Louisville Trust Co. v. Johns–Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979) (emphasis added) (internal quotation marks omitted).

First, "injury" is a term of art in Kentucky that is distinguishable from mere physical harm. *See Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000).  For purposes of the discovery rule, injury "is defined as 'the invasion of any legally protected interest of another.'"  *Id.*  That does not mean, however, that the plaintiff must know that she has a legal cause of action.  *See Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1982) (rejecting the argument that the statute of limitations begins to run from the date plaintiffs discovered they had a cause of action).  The plaintiff must simply be aware that she has been wronged by another.  *See id.*

Second, the discovery rule stops tolling the statute once the plaintiff knows, either actually or constructively, that the defendant "may" have caused her injury—definitive knowledge of causation is not needed.  *See Johns-Manville Prods. Corp.*, 580 S.W.2d at 501. Constructive knowledge, through awareness of sufficient "critical facts" to put the plaintiff on notice, will trigger the statute of limitations period.  *Boggs v. 3M Co.*, No. 11-cv-57-ART, 2012 WL 3644967, at *3 (E.D. Ky. Aug. 24, 2012) (internal quotation marks omitted) (collecting cases), *aff'd on other grounds*, No. 12-6062, 2013 WL 2378558 (6th Cir. May 31, 2013); *see also Wiseman*, 37 S.W.3d at 712 (holding that "actual or constructive knowledge . . . triggers the running of the statute of limitations").  So, for purposes of the discovery rule,

once the plaintiff encounters facts that "should excite his suspicion" he effectively has "actual knowledge of th[e] entire claim." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 64 (Ky. 2010).[3]

Third, once the plaintiff knows he has been injured, even if he does not have actual or constructive knowledge of who caused his injury, he "has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints." *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 151 (Ky. 2007). If he is not reasonably diligent in conducting such an investigation, the discovery rule will not toll the statute of limitations. *See Hazel v. Gen. Motors Corp.*, 83 F.3d 422, at *3 (6th Cir. 1996). In short, potential plaintiffs cannot simply wait for someone else to connect the dots for them. *See Fluke*, 306 S.W.3d at 67 ("Despite our sympathy for those injured by products through no fault of their own, such injured parties have the duty to act diligently to investigate apparent possible causes of their injuries in order to pursue claims within the statute of limitations.").

### B.   Adams's Case Does Not Qualify for the Discovery Rule

Adams knew that he had suffered an "injury" by the end of 1981. That year he not only was diagnosed with both silicosis and black lung disease, but he also filed a workers' compensation claim against his employer and applied for federal black lung benefits. *See* R. 27-2 at 32 (Tr. 302); R. 27-3; R. 27-5 at 1; R. 27-7. The fact that Adams took two different steps to assert legal claims shows that he knew or should have known that he had suffered an invasion of his legally protected interests. *See Wiseman*, 37 S.W.3d at 712. The

---

[3] While *Fluke* announced this rule in the equitable estoppel context, its reasoning clearly applies to the general issue of when a plaintiff has constructive knowledge of a potential claim for statute of limitations purposes. *See* 306 S.W.3d at 61–67.

questions therefore become:  (1) whether Adams knew that 3M and Mine Safety might have caused his injury, and, if not, (2) whether Adams exercised reasonable diligence in investigating the identity of his tortfeasor.  *See Hazel*, 83 F.3d 422, at * 3; *Johns-Manville Prods. Corp.*, 580 S.W.2d at 501.

   ***Constructive Knowledge:***  The statute of limitations clock started for Adams in 1981 because he had "sufficient critical facts" to put him on notice that there was a potential connection between his injuries and the respirators he wore.  *Boggs*, 2012 WL 3644967, at *3 (internal quotation marks omitted) (collecting cases); *see also Fluke*, 306 S.W.3d at 67 (holding that facts that should cause suspicion are the same as actual knowledge); *Wiseman*, 37 S.W.3d at 712 (holding that "constructive knowledge . . . triggers the running of the statute of limitations").  By the end of 1981, Adams knew the following:

   (1)   He wore respirators in the mine to protect him from breathing in coal dust.  R. 28-7 at 33, 61 (Tr. 123–24, 237).[4]

   (2)   The black lung disease he was diagnosed with could be caused by inhaling coal dust.  *See id.* at 61 (Tr. 237).

   (3)   He had been diagnosed with black lung disease due to his work in coal mines.  *See id.* (Tr. 236–37).

Any reasonable person facing these facts would at least be suspicious that the respirators he wore might not have worked as promised.  *See Boggs*, 2012 WL 3644967, at *3–*4 (collecting cases).  In fact, Adams admits that his suspicions about what caused his injury— including his respirator's role—were aroused.  *See* R. 30-1 at 7 (Tr. 237) (indicating that he

---

   [4] While Adams claims that he did not know what specific protection the masks provided when he wore them in the mines, *see* R. 28-7 at 41 (Tr. 156), he admits that at the time he wore them he knew the masks were for dust and assumed they were for his protection, *see id.* (Tr. 155–57).  Furthermore, he admits that, at the time he was diagnosed with silicosis in 1981, he knew the masks were supposed to protect him from coal dust.  *See id.* at 61 (Tr. 237).

knew his mask was supposed to protect him, and, thus, he must have contracted silicosis when he removed his mask while in the mines).  Adams's awareness of these three critical facts was enough to trigger the statute of limitations period.

Adams resists this conclusion, going to great lengths to point out that no plaintiff had brought a products liability claim against a respirator manufacturer at the time he learned of his injury in 1981.  R. 29 at 7–9.  This argument misunderstands the constructive knowledge standard.  Whether plaintiff's attorneys had figured out that they could sue respirator manufacturers is irrelevant.  *See Huff*, 644 S.W.2d at 334 (rejecting the argument that knowledge that a cause of action exists controls the statute of limitations).  To have constructive knowledge, Adams just needed to be aware of facts indicating that the defendants "may" have caused his injury.  *Johns-Manville Prods. Corp.*, 580 S.W.2d at 501. And he was.  *Cf. Boggs*, 2012 WL 3644967, at *3.

***Reasonable Diligence:***  Even if Adams did not have constructive knowledge of his claim against 3M and Mine Safety in 1981, the fact that he knew had suffered an "injury" meant he had a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints.  *See Fluke*, 306 S.W.3d at 67; *Queensway Fin. Holdings Ltd.*, 237 S.W.3d at 151.  In cases like this, if the plaintiff does not identify the tortfeasor before the statute of limitations expires, the bar for relief is high.  *See Queensway Fin. Holdings Ltd.*, 237 S.W.3d at 151 ("[T]he discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries." (internal quotation marks omitted)).

Adams admits that he did absolutely nothing from 1981 until 2011 to investigate the possibility that a defective respirator caused his injury. *See* R. 28-7 at 62 (Tr. 238). The issue of whether the plaintiff exercised reasonable diligence is usually a jury question. *See Elam v. Menzies*, 594 F.3d 463, 467 (6th Cir. 2010). Still, taking no action whatsoever is— as a matter of law—failure to exercise reasonable diligence. *See Blanton v. Cooper Indus., Inc.*, 99 F. Supp. 2d 797, 803 (E.D. Ky. 2000). Adams points out that he did search for a cause of his injury in 1981, when he concluded that he had contracted silicosis because he did not wear his mask twenty-five to thirty percent of the time he was in the mines. R. 29 at 9. He claims that this conclusion made it reasonable for him to not investigate the possibility that his respirators were defective. *Id.* Adams's investigation, however, involved only his own musings. *See* R. 28-7 at 61 (Tr. 237). An inquiry of this sort cannot satisfy the discovery rule's reasonable diligence standard as a matter of law.

Consider, for example, *Fluke Corp. v. LeMaster*, a Kentucky Supreme Court case involving injuries from a factory explosion allegedly caused by a faulty voltage meter. 306 S.W.3d at 57–58. The plaintiffs sued several alleged tortfeasors within the one-year statute of limitations period, but they added the manufacturer of the voltage meter as a defendant only after the expiration of the statutory time constraints. *Id.* at 58. The plaintiffs argued that the discovery rule justified tolling the statute of limitations, since they "had not heard of any previous problems with Fluke voltage meters and, thus, had no reason to suspect that meter malfunction may have caused the accident until they heard" that another voltage meter by the same company had been recalled. *Id.* at 60–61. This closely echoes Adams's arguments. Like the *Fluke* plaintiffs, he originally attributed his injury to a different cause—

9

in his case, himself—long before realizing the role the defendant's faulty product might have played.  R. 9 at 9.  And, again like the *Fluke* plaintiffs, he alleges that his search between 1981 and 2011 was reasonably diligent, since he had not heard of any problems with his respirators and therefore had no reason to suspect that they were to blame at that time.  This argument did not save the plaintiffs in *Fluke* from summary judgment in favor of the defendant.  *Fluke*, 306 S.W.3d at 61 (finding that the plaintiffs should have investigated the possibility that the voltage meter malfunctioned and holding that the lower court erred when it tolled the statute of limitations).  Similarly, it cannot save Adams from a finding that he did not exercise reasonable diligence to discovery the cause of his injury.

   In summary, under Kentucky law a plaintiff's duty to investigate with reasonable diligence does not cease simply because he erroneously, but genuinely, believes he has identified the source of his injury.  *See, e.g.*, *Faulkner v. ABB, Inc.*, No. 08-cv-212, 2011 WL 1225697, at *2–*4 (W.D. Ky. Mar. 30, 2011); *Fluke*, 306 S.W.3d at 61; *Combs*, 183 S.W.3d at 199.  This is particularly true where, as here, nothing would have stopped Adams from discovering the actual tortfeasor within the statutory time constraints had he exercised greater diligence.  *See Faulkner*, 2011 WL 1225697, at *3; *Queensway Fin. Holdings Ltd.*, 237 S.W.3d at 151.  The consequences of this rule are admittedly harsh for plaintiffs who, like Adams, honestly believed they were to blame for their own injuries.  Still, Kentucky law places these limits on the discovery rule for a reason.  If Adams's version of the discovery rule were law, then any plaintiff could evade summary judgment by alleging an initial, subjective belief that he had caused his own injury and a belated discovery that the defendant was actually at fault.  In other words, the exception would swallow the rule.

Adams's other arguments that he exercised reasonable diligence are equally unpersuasive. First, he points out that in 1981 he sought out an attorney and filed a workers' compensation claim. R. 29 at 9. But, seeing a lawyer, and following that lawyer's advice, does not toll the statute. *Cf. Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 641 (6th Cir. 1986) (holding that the statute of limitations continues to run despite the fact the plaintiff consulted an attorney). Second, he claims that the fact he moved to Lawrence County, far away from the mines he worked in, meant he was unlikely to learn about defects in respirators. *See* R. 29 at 9–10. However, Adams knew about his injury before he moved, so his duty to investigate began before his move. *See* R. 28-7 at 5, 78 (Tr. 10, 302). Adams provides no authority for the proposition that moving to a new town tolls the statute of limitations.

Thus, Adams had sufficient "critical facts" to put him on notice that he had a possible claim against the defendants. He also failed to exercise reasonable diligence once he learned of his injury. The discovery rule cannot rescue his untimely claim.

11

## CONCLUSION

Accordingly, for the reasons provided above, it is **ORDERED** that:

(1)    Defendant 3M Company's Motion for Summary Judgment, R. 27, is

   **GRANTED**.

(2)    Defendant Mine Safety Appliance's Motion for Summary Judgment, R. 28, is

   **GRANTED**.

(3)    All pending deadlines and hearings are **CANCELLED**.

(4)    The Clerk of the Court shall **STRIKE** this case from the Court's active docket.

(5)    A separate Judgment will issue.

This the 5th day of July, 2013.

**Signed By:**

**_Amul R. Thapar_** _AT_

**United States District Judge**

12